# List of Overt Acts



FILED

12:39 pm, 10/12/21

Margaret Botkins
Clerk of Court

These overt acts are merely allegations. They are not evidence of any kind.

1. On November 25, 2014, Mitchell created the email address kevin@nutechenr.com.

2. No later than November 25, 2014, Mitchell created and posted online the website www.nutechenr.com to publish false and misleading information about NuTech. This website was available nationwide, including in the District of Wyoming, through at least May 2016.

3. On December 22, 2014, Mitchell convinced N.M. to wire $20,000 from Gillette, Wyoming, to Mitchell in Colorado. That same day, Mitchell caused M.P. to wire $100,000 to Mitchell.

4. On December 23, 2014, Mitchell wired $10,000 to HERMAN and $80,000 to HORN. This money came from the $20,000 N.M. wired to Mitchell and the $100,000 M.P. wired to Mitchell the day before.

5. Between January 8 and January 15, 2015, HERMAN instructed HORN to wire money to T.C. and to other persons involved in the Defendants' purchase of EcoEmissions convertible notes. This money came from the $80,000 Mitchell wired to HORN on December 23, 2014.

6. On January 21, 2015, Mitchell and HERMAN directed T.C. to amend EcoEmissions' articles of incorporation to change the name of the company to NuTech Energy Resources Inc., and to authorize the issuance of up to 60 billion shares of common stock. The amendment was filed with the Delaware Secretary of State on March 23, 2015.

7. On March 24, 2015, WINTERS created a login account with OTC Markets Group. This account allowed WINTERS to post information related to NuTech online at www.otcmarkets.com.

8. On or before May 19, 2015, HERMAN and HORN created an attorney letter with respect to current information for NuTech as if the letter had been written by HORN and contained his legal opinions. In fact, the letter was written in significant part by HERMAN and contained false and misleading information. HORN did not review the information in the letter before signing and issuing it on his letterhead.

9. On May 19, 2015, WINTERS used his email account to login and post the attorney letter with respect to current information described in Overt Act 8 online at www.otcmarkets.com, where the letter could be accessed in the District of Wyoming.

10. On July 10, 2015, HERMAN emailed documents to Pacific Stock Transfer Company to support the issuance of free-trading shares of NuTech. These documents included:
   a. a resolution of NuTech's board of directors, which bears the apparent signature of K.T. as NuTech's chief executive officer, that claims the company's board of directors had met and authorized the issuance of free-trading shares of NuTech common stock based on the "legal conversion from debt to equity as presented to the Transfer Agent, Pacific Stock Transfer"; and
   b. an instruction letter directing issuance of more than 12 billion free-trading shares to a number of individuals and entities, including individuals and entities related to Mitchell, HERMAN, and WINTERS.

11. On July 27, 2015, HERMAN sent an email to WINTERS with the subject line "how do we add date" and an attachment entitled "ECMZ debt assignment signed.pdf." The attachment was a debt-assignment agreement signed by T.C., G.P., and D.R. in December 2014 and January 2015. Later that same day, WINTERS sent an email to HERMAN with an attachment entitled "Debt assignment.pdf." This attachment was substantially identical to the debt-assignment agreement HERMAN had sent to WINTERS except the handwritten dates had been altered to make it appear that T.C., G.P., and D.R. had signed the agreement one year earlier in December 2013 and January 2014.

12. On July 27, 2015, HERMAN emailed documents to Pacific Stock Transfer Company to support the issuance of free-trading shares of NuTech. These documents included:
   a. a backdated debt-assignment agreement, which WINTERS had emailed to HERMAN earlier that day (see Overt Act 11), that made it appear Mitchell and HERMAN had acquired convertible debts one year before they actually acquired the debts; and
   b. a notice of conversion signed by HERMAN and bearing the apparent signature of K.T. as NuTech's chief executive officer.

13. On August 18, 2015, Mitchell emailed an application to Kingdom Trust Company to open an account for Bravo 20 Partners to hold shares of NuTech.

14. On August 18, 2015, WINTERS emailed an application to Kingdom Trust Company to open an account for Intrepid Capital Holdings Corp to hold shares of NuTech. Intrepid Capital Holdings Corp is a Florida corporation controlled by WINTERS and HERMAN.

15. On August 19, 2015, HERMAN sent an email to WINTERS with the subject line "fix" and an attachment entitled "Consideration NERG.pdf." The attachment was an outgoing

wire transfer request showing the $80,000 wire sent by Mitchell from Bravo 20 Partners' bank account to HORN on December 23, 2014, for the "ECMZ Debt Conversion" as further described in Overt Act 4. Later that same day, WINTERS sent an email to HERMAN with an attachment entitled "wire.pdf." This attachment was substantially identical to the outgoing wire transfer request HERMAN had sent to WINTERS except the amount wired had been altered to read $280,000 instead of $80,000.

16. On August 19, 2015, HERMAN sent an email to Pacific Stock Transfer Company regarding the issuance of free-trading shares of NuTech in which he states, "All the free trading shares are being issued on percentage basis of ownership from the cumulative dollar consideration which was pretty good number of $280,000." [*sic.*] The email also contained the following documents:

 a. the backdated debt-assignment agreement, which WINTERS had emailed to HERMAN on July 27, 2015 (see Overt Act 11), that made it appear Mitchell and HERMAN had acquired convertible debts one year before they actually acquired the debts;

 b. the altered outgoing wire transfer request, which WINTERS had created and emailed to HERMAN earlier that day (see Overt Act 15), falsely showing that Mitchell had wired $280,000 from Bravo 20 Partners' bank account to HORN on December 23, 2014, for the "ECMZ Debt Conversion," when in fact Mitchell had wired only $80,000 to HORN that day;

 c. a notice of conversion signed by HERMAN and bearing the apparent signature of K.T. as NuTech's chief executive officer; and

 d. a spreadsheet listing who should receive free-trading shares of NuTech, including individuals and entities related to Mitchell, HERMAN, and WINTERS.

17. On August 22, 2015, HERMAN sent an email to Pacific Stock Transfer Company regarding the issuance of free-trading shares of NuTech in which he states, "In case you were confused, all the parties getting the stock via debt conversion are shareholders of Bravo 20 and its a distribution to its ownership. That's how the 280 was used to buy that particular debt." [*sic.*]

18. On September 2, 2015, HERMAN sent an email containing documents to Pacific Stock Transfer Company to support the issuance of free-trading shares of NuTech. These documents included:

 a. a purchase and assignment of interest in wells and leases dated December 23, 2014, that claims to transfer 5 billion shares of EcoEmissions stock to Bravo 20 Partners

in exchange for $280,000 and an assignment of wells, which document bears the apparent signatures of Mitchell and L.L.;

b. the altered outgoing wire transfer request, which WINTERS had created and emailed to HERMAN on August 19, 2015 (see Overt Act 15), and an altered bank statement falsely showing that Mitchell had wired $280,000 from Bravo 20 Partners' bank account to HORN on December 23, 2014, for the "ECMZ Debt Conversion," when in fact Mitchell wired only $80,000 to HORN on that day;

c. a notice of conversion signed by HERMAN and bearing the apparent signature of K.T. as NuTech's chief executive officer; and

d. an email showing that NuTech's trading symbol had changed to NERG on June 26, 2015.

19. On September 8, 2015, HERMAN sent an email to WINTERS with the subject line "ian horn." The body of the email read: "Could you send me a blank word doc with Ian's letterhead." That same day, WINTERS sent an email to HERMAN with an attachment entitled "Horn and assoc letterhead.docx." This attachment included HORN's letterhead and a digital copy of HORN's signature.

20. On September 16, 2015, WINTERS sent another email to HERMAN with the attachment entitled "Horn and assoc letterhead.docx" as further described in Overt Act 19.

21. On or before September 16, 2015, HERMAN and HORN created two attorney-opinion letters related to the issuance of free trading shares of NuTech as if the letters had been written by HORN and contained his legal opinions. In fact, each letter was written in significant part by HERMAN and contained false and misleading information. HORN did not review the information in each letter before signing and issuing each letter on his letterhead.

22. On September 18, 2015, HERMAN sent two email messages containing documents to Pacific Stock Transfer Company to support the issuance of free-trading shares of NuTech. These documents included:

a. statements of non-affiliation that falsely state Mitchell, HERMAN, and WINTERS are not affiliates of, and did not control, NuTech;

b. a purchase and assignment of interest in wells and leases dated December 23, 2014, that claims to transfer 5 billion shares of EcoEmissions' stock to Bravo 20 Partners in exchange for $280,000 and an assignment of wells;

c. the two attorney-opinion letters described in Overt Act 21;

d. a resolution of NuTech's board of directors, which bears the apparent signature of K.T. as NuTech's chief executive officer, that claims the company's board of directors had met and authorized the issuance of shares based on the "legal conversion from debt to equity as presented to the Transfer Agent, Pacific Stock Transfer";

e. a notice of conversion signed by HERMAN and Mitchell, and bearing the apparent signature of K.T. as NuTech's chief executive officer, claiming to convert an unpaid note into approximately 13 billion shares of non-restricted NuTech stock; and

f. statements of non-affiliation signed by N.M., K.M., and C.J.H.

23. On or before September 23, 2015, HERMAN and HORN created an attorney-opinion letter related to the issuance of free-trading shares of NuTech as if the letter had been written by HORN and contained his legal opinions. In fact, the letter was written in significant part by HERMAN and contained false and misleading information. HORN did not review the information in the letter before signing and issuing the letter on his letterhead.

24. On September 23, 2015, HERMAN sent an email to WINTERS with the subject line "call u in two" and an attachment entitled "Assignment Bravo E Pro.docx." The attachment was a draft purchase and assignment of interest in wells and leases between Bravo 20 Partners and EcoEmissions dated December 23, 2014. Less than 30 minutes later, HERMAN sent a second email with the subject line "doc edit" containing text describing an alleged transfer of debt instruments, consulting agreements, and 5 billion shares of EcoEmissions stock from E-Pro Systems LLC to Bravo 20 Partners in exchange for $280,000 and an assignment of wells. Approximately 20 minutes later, WINTERS sent an email to HERMAN with an attachment entitled "Assignment Bravo E Pro.docx." This version of the assignment document included the text sent by HERMAN in the "doc edit" email, and digital copies of the signatures of D.R. and G.P., which signatures were forged and unauthorized.

25. On September 23, 2015, HERMAN emailed documents to Pacific Stock Transfer Company to support the issuance of free-trading shares of NuTech. These documents included:

a. the attorney-opinion letter described in Overt Act 23; and

b. the E-Pro purchase and assignment of interest in wells and leases dated December 23, 2014, bearing the forged and unauthorized digital signatures of D.R. and G.P., which WINTERS had created and emailed to HERMAN earlier that day (see Overt Act 24).

26. On September 26, 2015, HERMAN emailed a statement of non-affiliation to Pacific Stock Transfer Company to support the issuance of free-trading shares of NuTech. The statement included the forged and unauthorized digital signatures of D.R. and G.P.

27. On September 28, 2015, HERMAN emailed documents to Pacific Stock Transfer Company to support the issuance of free-trading shares of NuTech, including corporate resolutions signed by K.M. and C.J.H. in Wyoming. That same day, Pacific Stock Transfer Company issued approximately 13 billion free-trading shares of NuTech to a number of individuals and entities, including individuals and entities related to Mitchell, HERMAN, and WINTERS. These stock certificates were shipped by interstate courier to HERMAN in Pennsylvania.

28. Between November 3 and November 9, 2015, HERMAN, Mitchell, and co-conspirators known and unknown to the grand jury sold approximately 6.3 million shares of NuTech stock to the public. During this time period, at least one investor in Wyoming purchased NuTech shares in a public sale. The conspirators used Skype to coordinate their sales of NuTech stock and timed their sales to coincide with email promotions containing false and misleading information about NuTech.

29. On January 28, 2016, HERMAN emailed documents to J.W. Korth & Company so that HERMAN and WINTERS could execute trades of NuTech and another company's stock. The documents included:
   a. the backdated debt-assignment agreement described in Overt Act 11;
   b. the altered outgoing wire transfer request described in Overt Act 15;
   c. one of the two attorney-opinion letters described in Overt Act 21;
   d. the attorney-opinion letter described in Overt Act 23; and
   e. the E-Pro purchase and assignment of interest in wells and leases dated December 23, 2014, bearing the forged and unauthorized signatures of D.R. and G.P., described in Overt Act 24.

30. On January 29, 2016, HERMAN sent an email to J.W. Korth & Company to sell "1mm shares" of NuTech shares "ASAP."

31. On or before March 1, 2016, Mitchell created a Q3 2015 financial statement and disclosure for NuTech.

32. On March 1, 2016, WINTERS used his email account to login and post the financial statement and disclosure described in Overt Act 31 online at www.otcmarkets.com, where the statement and disclosure could be accessed in the District of Wyoming.

33. On or before March 7, 2016, HERMAN and HORN created an attorney letter with respect to current information for NuTech as if the letter had been written by HORN and contained his legal opinions. In fact, the letter was written in significant part by HERMAN and contained false and misleading information. HORN did not review the information in the letter before signing and issuing it on his letterhead.

34. On March 7, 2016, Mitchell used kevin@nutechenr.com to login and post the attorney letter with respect to current information described in Overt Act 33 online at www.otcmarkets.com, where the letter could be accessed in the District of Wyoming.

35. On or before April 4, 2016, HERMAN and HORN created an attorney letter with respect to current information for NuTech dated April 3, 2016, as if the letter had been written by HORN and contained his legal opinions. In fact, the letter was written in significant part by HERMAN and contained false and misleading information. HORN did not review the information in the statement before signing and issuing it on his letterhead.

36. On April 4, 2016, Mitchell used kevin@nutechenr.com to login and post the attorney letter with respect to current information described in Overt Act 35 online at www.otcmarkets.com, where the letter could be accessed in the District of Wyoming.

37. On April 21, 2016, Mitchell used kevin@nutechenr.com to communicate with staff at OTC Markets Group, and to login and update NuTech's online company profile published at www.otcmarkets.com, where that profile could be accessed in the District of Wyoming.

38. On May 10, 2016, Mitchell emailed the text of a press release to staff at OTC Markets Group. The email claimed that a Russian company had offered to buy NuTech for 2.5 cents per share.

39. On or before May 16, 2016, Mitchell wrote a script for K.T. to read on an investor conference call, which was available nationwide, including in the District of Wyoming. Following the script, K.T. provided false and misleading information about (among other things) the alleged offer to purchase NuTech.

40. Beginning no later than May 9 and continuing through at least May 19, 2016, HERMAN, Mitchell, and WINTERS sold approximately 65.5 million NuTech shares to the public. During this time period, at least one investor in Wyoming purchased NuTech shares in a public sale. As a result of these sales, Mitchell received from Kingdom Trust over $103,000 on May 16 and over $28,000 on May 17.

41. On May 17, 2016, Mitchell wired $10,000 to HERMAN. This money came from the approximately $131,000 Mitchell had received from Kingdom Trust on May 16 and May 17.